# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
### No. 12-754V
Filed: January 5, 2018

| | | |
|---|---|---|
| * * * * * * * * * * * * * * | | |
| *The Estate of* EDUARDO ROSAS, | * | PUBLISHED |
| *Decedent, by and through* JENNY | * | |
| ROSAS, *as Personal Representative*, | * | |
| | * | |
| Petitioner, | * | Decision on Attorneys' Fees and Costs; |
| v. | * | Estate Administration Fees and Costs |
| | * | |
| SECRETARY OF HEALTH | * | |
| AND HUMAN SERVICES, | * | |
| | * | |
| Respondent. | * | |
| * * * * * * * * * * * * * * | | |

*Isaiah R. Kalinowski, Esq.*, Maglio Christopher and Toale, PA, Washington, DC, for petitioner.
*Ann D. Martin, Esq.*, U.S. Department of Justice, Washington, DC, for respondent.

## DECISION ON ATTORNEYS' FEES AND COSTS[1]

**Roth**, Special Master:

On November 5, 2012, Eduardo Rosas ("Mr. Rosas") filed a petition for compensation under the National Vaccine Injury Compensation Program.[2] Mr. Rosas passed away on August 3, 2013, and on April 10, 2015, Jenny Rosas ("Mrs. Rosas" or "petitioner") was substituted as legal representative for his estate. ECF No. 43. Petitioner alleged that Mr. Rosas developed and/or significantly aggravated transverse myelitis ("TM") as a result of receiving an influenza ("Flu") vaccination on August 16, 2011, and died as a result of TM-related sequela. Amended Petition ("Amend. Pet.") at 1-2. ECF No. 82. Respondent denied causation; nevertheless, the

---

[1] This decision will be posted on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 (2012). As provided in 42 U.S.C § 300aa-12(d)(4)(B), however, the parties may object to the decision's inclusion of certain kinds of confidential information. To do so, each party may, within 14 days, request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, this decision will be available to the public in its present form. *Id.*

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

parties stipulated to a damages award, and the undersigned issued a decision awarding damages on July 28, 2017.  *See* ECF No. 84.

On October 10, 2017, petitioner filed a Motion for Attorneys' Fees and Costs, requesting attorneys' fees in the amount of $91,165.40, and costs in the amount of $31,812.59, for a total of $122,977.99.  Motion for Fees, ECF No. 89.  In addition to her request for fees and costs for her vaccine attorney, petitioner requested a total of $12,306.17 in attorneys' fees and costs associated with her efforts to "open an estate for Decedent" in three different states.  *Id.* at 2-3.  According to petitioner's attorney, after Mr. Rosas's death, "it appeared that his elderly parents"—who live in Florida—were the proper parties to be appointed as representatives of his estate.  Mr. Rosas lived with and was cared for by his parents toward the end of his life, in Florida.  Petitioner's counsel retained a Florida attorney (Patricia Hernandez) to represent them in that appointment, incurring fees of $1,894.00.  Pet. Ex. 72 at 5-6; Pet. Ex. 69 at 2.  According to petitioner's vaccine attorney, "[i]t soon became apparent" that Mrs. Rosas, Mr. Rosas's widow, "retained a superior claim to act as personal representative."  Pet. Ex. 72 at 6.  According to petitioner's counsel, Mr. and Mrs. Rosas "split their time between" New York and Pennsylvania, and Mrs. Rosas initially sought appointment as the representative of the estate in New York, through a New York attorney (Theresa Agunwa).  *Id.*  The New York state court judge apparently found Mr. Rosas's New York ties to be insufficient, however, after repeated efforts to produce evidence showing sufficient ties, "the state court judge was not persuaded."  *Id.*  "Mrs. Rosas terminated her relationship" with Ms. Agunwa after paying a $1,500.00 retainer and incurring $1,666.67 in fees.[3]  *Id.*; Pet. Ex. 70 at 1-3.  Mrs. Rosas was later successfully appointed as the representative of the estate of Mr. Rosas in Pennsylvania through a Pennsylvania attorney (William Reaser, Jr.).  Mrs. Rosas paid Mr. Reaser a $1,500.00 retainer.  Pet. Ex. 72 at 7.  Mr. Reaser also billed an additional $2,225.00 in fees as well as several costs—a $120.50 court filing fee (paid by Mrs. Rosas), $25.00 in court costs, and $3,375.00 in estate inheritance taxes.  Pet. Ex. 71 at 1-4.[4]

**The Court's Order for Further Information on Petitioner's Application for Fees and Costs**

Following review of petitioner's Motion for Fees, the undersigned issued an Order on October 12, 2017, noting that the Vaccine Act provides that a special master "may award an amount of compensation to cover petitioner's reasonable attorneys' fees and other costs *incurred in any proceeding on [a] petition*," 42 U.S.C. § 300aa-15(e)(1) (emphasis added), and that the petitioner bears the burden to "present adequate proof at the time of submission of the fee application" that the fees and costs are compensable, *Sabella v. Sec'y of Health & Human Servs.*, 86 Fed. Cl. 201, 205 (2009) (citation and alteration omitted).  Order, ECF No. 90.  Accordingly,

---

[3] Petitioner's retainer agreement with Ms. Agunwa stated that "the fee for the legal services relating to this matter will be billed from the recovery/settlement from the Vaccine Injury Compensation Trust Fund at the rate of $250.00 an hour" and that the $1,500.00 retainer fee would "be deducted from portion [sic] of our fees from the recovery from [the] Vaccine Injury Compensation Trust Fund." Pet. Ex. 66 at 5.  Thus, in signing this retainer agreement, Mrs. Rosas agreed to pay the attorneys' fees from the recovery in this matter.

[4] Petitioner's retainer agreement with Mr. Reaser provided an hourly billing rate of $400.00 for court appearances and $250.00 for non-court matters.  Pet. Ex. 66 at 7.

petitioner was ordered to file a supplement to her Motion for Fees explaining the basis for awarding the following expenditures: (1) the fees charged by Ms. Hernandez and Ms. Agunwa in connection with the two "abortive attempt[s] to open an estate"; (2) the fees charged by Mr. Reaser for estate work that he performed after petitioner obtained authorization as personal representative; and (3) the estate inheritance taxes.  *Id.*

## Petitioner's Response to the Court's Order

On November 11, 2017, petitioner filed a Supplemental Brief to her Motion for Fees. Supp. Brief, ECF No. 91.  As to the Florida filing, petitioner's attorney submitted that Mr. Rosas's parents "expressed [an] earnest desire to pursue this Petition." *Id.* at 3.  They also represented that Mr. Rosas died intestate and had divorced Mrs. Rosas prior to his death.  *Id.* Petitioner's attorney submitted that he had no "way to contact [Mrs. Rosas] to confirm this information,"[5] and the "factual information available at the time" indicated that Florida was the appropriate venue. *Id.* at 4.  However, after "appropriate notice was given to potential claimants," Mrs. Rosas objected, stating that she had a superior claim as personal representative." *Id.* at 3.  According to petitioner's counsel, "the divorce proceedings referenced by Mr. Rosas'[s] parents had been filed but never completed." *Id.* at 4.  Given that Mr. and Mrs. Rosas had previously lived in New York, Mrs. Rosas believed that New York was the appropriate venue, and petitioner's counsel advised her to retain a New York estate attorney. *Id.* Mrs. Rosas did so.  According to petitioner's counsel, he and the New York attorney were "bewildered" when the New York judge denied the claim for insufficient contacts. *Id.* at 4.  Mrs. Rosas then turned to Pennsylvania, where, "[u]nbeknownst to Petitioner's Counsel up to that point, Mr. Rosas had been in the process of transitioning his residence" before his vaccination.[6] *Id.* at 5.

With respect to the second question raised in the Court's order—regarding the fees and costs related to administration of the estate in Pennsylvania—petitioner argued that costs incurred for administering an estate are compensable based on a "but for" test, noting that petitioner had "no other reason to open an estate other than" to pursue this case. *Id.* at 6-8 (citing *Ceballos ex rel. Ceballos v. Sec'y of Health & Human Servs.*, No. 99-97V, 2004 WL 784910 (Fed. Cl. Spec. Mstr. Mar. 25, 2004)).

With respect to the third question—regarding estate inheritance estate taxes—petitioner cited two cases purporting to award costs sufficient to satisfy state taxes. *Id.* at 9 (citing *Horner v. Sec'y of Health & Human Servs.*, No. 15-0395V, 2016 WL 8786191 (Fed. Cl. Spec. Mstr. Dec. 15, 2016); *Carda v. Sec'y of Health & Human Servs.*, No. 14-191V, 2016 WL 5224406 (Fed. Cl. Spec. Mstr. Aug. 19, 2016)).

On November 26, 2017, respondent filed a response to petitioner's Motion for Fees. Respondent did not oppose the request in substance, but instead asked that the undersigned

---

[5] The medical records filed in this case list Mrs. Rosas as Mr. Rosas's "spouse" and provide her home address in Pennsylvania as well as two telephone numbers.  *See, e.g.*, Pet. Ex. 16 at 5.

[6] Mr. Rosas's vehicles were registered in Pennsylvania, and he had a Pennsylvania driver's license at the time he received the allegedly culpable vaccine.  Supp. Brief, ECF No. 91, at 5.

exercise her discretion in determining the proper amount to be awarded.  ECF No. 92.  Petitioner filed a reply to respondent's Response on December 1, 2017.  ECF No. 93.

## I. Applicable Legal Standards

The Vaccine Act permits an award of "reasonable attorneys' fees" and "other costs." § 15(e)(1).  If a petitioner succeeds on the merits of his or her claim, the award of attorneys' fees is automatic.  *Id.*; *see Sebelius v. Cloer*, 569 U.S. 369, 373 (2013).  However, a petitioner need not prevail on entitlement to receive a fee award as long as the petition was brought in "good faith" and there was a "reasonable basis" for the claim to proceed.  § 15(e)(1).

The Federal Circuit has endorsed the use of the lodestar approach to determine what constitutes "reasonable attorneys' fees" and "other costs" under the Vaccine Act.  *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1349 (Fed. Cir. 2008).  Under this approach, [t]he initial estimate of a reasonable attorney's fee" is calculated by "multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate."  *Id.* at 1347-48 (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)).  That product is then adjusted upward or downward based on other specific findings.  *Id.*

A "reasonable hourly rate" is defined as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."  *Id.* at 1348 (quoting *Blum*, 465 U.S. at 896 n.11).  This rate is based on "the forum rate for the District of Columbia" rather than "the rate in the geographic area of the practice of petitioner's attorney." *Rodriguez v. Sec'y of Health & Human Servs.*, 632 F.3d 1381, 1384 (Fed. Cir. 2011) (citing *Avera*, 515 F. 3d at 1349).  There is a "limited exception" that provides for attorneys' fees to be awarded at local hourly rates when "the bulk of the attorney's work is done outside the forum jurisdiction" and "there is a very significant difference" between the local hourly rate and forum hourly rate.  *Id.*  This is known as the *Davis County* exception.  *See Hall v. Sec'y of Health & Human Servs.*, 640 F.3d 1351, 1353 (Fed. Cir. 2011) (citing *Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. U.S. EPA*, 169 F.3d 755, 758 (D.C. Cir. 1999)).  For cases in which forum rates apply, *McCulloch* provides the framework for determining the appropriate hourly rate range for attorneys' fees based upon the attorneys' experience.  *See McCulloch v. Sec'y of Health & Human Servs.*, No. 09-293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015).  The Office of Special Masters has issued a fee schedule that updates the *McCulloch* rates to account for inflation in subsequent years.[7]

Once the applicable hourly rate is determined, it is applied to the "number of hours reasonably expended on the litigation."  *Avera*, 515 F.3d at 1348.  The application for fees and costs must "sufficiently detail and explain the time billed so that a special master may determine . . . whether the amount requested is reasonable," and an award of attorneys' fees may be reduced for "vagueness" in billing.  *J.W. ex rel. Wilson v. Sec'y of Health & Human Servs.*, No. 15-1551V, 2017 WL 877278, at *4 (Fed. Cl. Spec. Mstr. Feb. 10, 2017).  Moreover, counsel

---

[7] This fee schedule is posted on the court's website.  *See* Office of Special Masters, *Attorneys' Forum Hourly Rate Fee Schedule: 2015-2016*, http://www.uscfc.uscourts.gov/sites/default/files/Attorneys-Forum-Rate-Fee-Schedule2015-2016.pdf.

should not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary." *Saxton ex rel. Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521 (Fed. Cir. 1993) (quoting *Hensley* v. *Eckerhart*, 461 U.S. 424, 434 (1983)). "Unreasonably duplicative or excessive billing" includes "an attorney billing for a single task on multiple occasions, multiple attorneys billing for a single task, attorneys billing excessively for intra office communications, attorneys billing excessive hours, [and] attorneys entering erroneous billing entries." *Raymo v. Sec'y of Health & Human Servs.*, 129 Fed. Cl. 691, 703 (2016).

Furthermore, some tasks are generally compensated at a reduced rate. Attorneys who perform non-attorney-level work are compensated at a rate comparable to what would be paid for a paralegal or secretary. *See O'Neill v. Sec'y of Health & Human Servs.*, No. 08-243V, 2015 WL 2399211, at *9 (Fed. Cl. Spec. Mstr. Apr. 28, 2015). Hours spent traveling are ordinarily compensated at one-half of the normal hourly attorney rate. *See Scott v. Sec'y of Health & Human Servs.*, No. 08-756V, 2014 WL 2885684, at *3 (Fed. Cl. Spec. Mstr. June 5, 2014) (collecting cases). Finally, some tasks are never compensable. For instance, "it is inappropriate for counsel to bill time for educating themselves about basic aspects of the Vaccine Program." *Matthews v. Sec'y of Health & Human Servs.*, No 14-1111V, 2016 WL 2853910, at *2 (Fed. Cl. Spec. Mstr. Apr. 18, 2016). And clerical and secretarial tasks should not be billed at all, regardless of who performs them. *See, e.g., McCulloch*, 2015 WL 5634323, at *26. Non-compensable clerical and secretarial tasks include making travel arrangements, reviewing and paying invoices, setting up meetings, organizing files, scheduling conference calls, and reviewing files for consistency. *J.W.*, 2017 WL 877278, at *3; *Barry v. Sec'y of Health & Human Servs.*, No. 12-039V, 2016 WL 6835542, at *4 (Fed. Cl. Spec. Mstr. Oct. 25, 2016).

It is "well within the Special Master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." *Saxton*, 3 F.3d at 1522. In exercising that discretion, special masters may reduce the number of hours submitted by a percentage of the amount charged. *See Broekelschen v. Sec'y of Health & Human Servs.*, 102 Fed. Cl. 719, 728-29 (2011) (affirming special master's reduction of attorney and paralegal hours); *Guy v. Sec'y of Health & Human Servs.*, 38 Fed. Cl. 403, 406 (1997) (same). Ultimately, special masters have substantial discretion in awarding fees and costs, and may adjust a fee request *sua sponte*, apart from objections raised by respondent and without providing petitioners with notice and opportunity to respond.[8] *See Sabella v. Sec'y of Health & Human Servs.*, 86

---

[8] In her reply to respondent's response, petitioner claims that because respondent did not object to petitioner's motion for fees and costs, "the Court may properly consider the fees and costs to be unopposed and grant them without further analysis." ECF No. 93 at 2. Although respondent's lack of opposition could arguably amount to a waiver of any future objections to this decision, the Vaccine Act permits an award of "*reasonable*" attorneys' fees and costs, § 15(e)(1) (emphasis added), which "compels each special master to determine independently whether a particular request is reasonable." *Savin ex rel. Savin v. Sec'y of Health & Human Servs.*, 85 Fed. Cl. 313, 318 (2008). "This obligation is not suspended—nor the sound discretion and common sense that underlie it rendered inoperable—merely because respondent failed to object." *Id.*; *see, e.g., Scharfenberger v. Sec'y of Health & Human Servs.*, 124 Fed. Cl. 225, 234 (2015); *Morse v. Sec'y of Health & Human Servs.*, 93 Fed. Cl. 780, 792 (2010). Rather, the petitioner bears the burden of showing that a request for fees is reasonable, and that burden must be satisfied "at the time [the] petitioner submits an application for attorneys' fees." *Rodriguez v. Sec'y of Health & Human Servs.*, 91 Fed. Cl. 453, 479-80 (2010), *aff'd*, 632 F.3d 1381 (Fed. Cir. 2011). Any possible "misperceptions regarding fees or costs" (ECF No. 93 at 3) should therefore be addressed in

Fed. Cl. 201, 209 (Fed. Cl. 2009). Special masters need not engage in a line-by-line analysis of petitioner's fee application when reducing fees. *See Broekelschen*, 102 Fed. Cl. at 729.

## II. Discussion

### A.    Vaccine Attorneys' Fees

Petitioner requests $91,165.40 in attorneys' fees for work performed by her vaccine attorneys. Pet. Ex. 67. The requested hourly forum rates, *see id.* at 38, are consistent with the rates previously found to be reasonable in cases involving petitioner's counsel. *See, e.g., Stewart v. Sec'y of Health & Human Servs.*, No. 12-776V, 2017 WL 2807955, at *2 (Fed. Cl. Spec. Mstr. May 30, 2017). Therefore, the undersigned finds the requested rates to be reasonable.

The hours expended, however, must be reduced, as a number of the hours billed were "excessive, redundant, or otherwise unnecessary." *Saxton*, 3 F.3d at 1521.[9] There are tasks billed which fall within the category of non-compensable clerical or secretarial work, such as reviewing and paying invoices, making travel arrangements, and setting up meetings.[10] There are also instances of duplicative billing,[11] as well as entries for tasks that are vague in description and do not provide any basis for determining their reasonableness.[12] Finally, petitioner's counsel billed several hours for travel at his full hourly rate, despite being unable to "take out work materials to work." Pet. Ex. 67 at 10.[13] As noted above, an "attorney will not be compensated at his or her full hourly rate for travel time" without "documentation of the work performed by

the motion for fees; special masters are "not obliged to offer petitioners' counsel a second chance to do what he should have done *ab initio*." *Savin*, 85 Fed. Cl. at 317; *see, e.g., Valdes v. Sec'y of Health & Human Servs.*, 89 Fed. Cl. 415, 424 (2009); *see also Masias v. Sec'y of Health & Human Servs.*, 634 F.3d 1283, 1292 n.10 (Fed. Cir. 2011) (rejecting the argument that "the special master's 'inquisitorial' mode of adjudication" in determining a fee award deprived the petitioner of "an opportunity to challenge the evidence that the special master relied upon").

[9] The following entries are examples and are not exhaustive; they merely provide a sampling.

[10] *See, e.g.*, Pet. Ex. 67 at 1 ("Review and approve invoice for medical records"); *id.* at 2 ("review and organize medical records"); *id.* at 5 ("Update client contact file"); *id.* at 9 ("Make travel arrangements for in-person client visit"); *id.* at 11 ("Update client file"); *id.* at 17 ("Receipt and review of Scheduling Order, calendar deadlines and update file accordingly"); *id.* at 20 ("Review and approve payment to Process Xpress for services of process"); *id.* at 21 ("Prepare shipping labels"); *id.* at 23 ("Review, process, and prepare medical records"); *id.* at 28 ("Finalize payment for medical literature").

[11] *See, e.g.*, Pet. Ex. 67 at 2 ("Review electronic notice re medical records"); *id.* ("Review electronic notice re medical records"); *id.* at 7 ("Telephone conference with process service"); *id.* ("Telephone conference with process service"); *id.* at 8 ("Review and organize medical records"); *id.* ("Review and organize medical records").

[12] *See, e.g.*, Pet. Ex. 67 at 21 ("Determine language for Misc Action"); *id.* ("Misc Action; revise Misc Action"); *id.* at 33 ("Review file for valid authorization").

[13] *See, e.g.*, Pet. Ex. 67 at 10 ("Check into flight electronically. Save baggage fee receipt to file"); *id.* ("Drive from client's home to hotel"); *id.* ("Travel to Miami for in-person meeting with client (does not include time spent in the air or in airports working on this or other cases). One connection flight schedule, but with major travel delay (1 hr. +) where I could not take out work materials to work").

[the] attorney while he or she was traveling"; instead, that time should be billed "at one-half the standard hourly rate." *O'Neill*, 2015 WL 2399211, at *7.

For these reasons, the undersigned finds that the requested $91,165.40 should be reduced by 10%. Accordingly, $82,048.86 is awarded in attorneys' fees.

## B.   Vaccine Attorneys' Costs

Petitioner requests a total of $31,812.59 in costs incurred by her vaccine attorneys. Pet. Ex. 68. This amount includes the $1,894.00 paid by her vaccine attorneys to Ms. Hernandez, which is not compensable for the reasons explained below. The remaining requested costs consist of the filing fee, shipping cost, medical record fees, and expert fees. These costs are reasonable. Accordingly, the undersigned awards $29,918.59 for costs incurred by petitioner's vaccine attorneys.

## C.   Estate Attorneys' Fees and Costs

Petitioner seeks $12,306.17 in fees and costs charged by her estate attorneys. First, petitioner requests compensation for the work performed by the three estate attorneys. Ms. Hernandez (the Florida estate attorney) billed $1,894.00 in attorney fees, which have been paid by petitioner's vaccine attorneys. Pet. Ex. 69. Ms. Agunwa (the New York estate attorney) billed $3,166.67—a $1,500.00 retainer fee paid by petitioner herself and $1,666.67 in unpaid attorney fees. Pet. Ex. 70. And Mr. Reaser (the Pennsylvania estate attorney) billed $3,725.00— a $1,500.00 retainer paid by petitioner and $2,225.00 in unpaid attorney fees. Pet. Ex. 71. Second, petitioner seeks compensation for estate costs: $120.50 in filing fees in Pennsylvania state court, which petitioner paid on the date she opened the estate; $25.00 in court costs that were paid by Mr. Reaser; and $3,375.00 in estate inheritance taxes, also paid by Mr. Reaser. *Id.* Some of these costs are compensable; others are not.

The fees charged by Ms. Hernandez are not compensable. "[C]osts are not to be awarded for work that is not necessary to a case," and "unnecessary or excessive costs" are to be disallowed "in their entirety." *Scharfenberger v. Sec'y of Health & Human Servs.*, No. 11-221V, 2015 WL 3526559, at *13 (Fed. Cl. May 15, 2015), *aff'd*, 124 Fed. Cl. 225 (2015). Here, it is not clear why Ms. Hernandez's fees and costs were necessary nor appropriate. Petitioner's vaccine attorney's attempts to obtain representative authority for Mr. Rosas's parents by hiring Ms. Hernandez was contrary to petitioner's case. When Mr. Rosas's vaccine attorney was hired, Mr. Rosas was married and living in Pennsylvania. The medical records list Mrs. Rosas as Mr. Rosas's "spouse" and provide Mrs. Rosas's address in Pennsylvania as well as two telephone numbers. Pet. Ex. 16 at 5. Had petitioner's attorney performed some simple investigation to confirm whether the Rosas's were in fact married or divorced, these costs would not have been incurred. Petitioner's attorney admits having accepted representations made by Mr. Rosas's parents, when a phone call to Mrs. Rosas would have yielded important and necessary information. Petitioner's attorney states that he had no way to contact Mrs. Rosas, yet admits that upon appropriate notice to potential claimants of the filing in Florida, Mrs. Rosas was served and objected, stating that she had the appropriate claim as the representative. Apparently, there was no difficulty in determining Mrs. Rosas's whereabouts in order to serve her with the papers

to which she objected.  Mr. Rosas's parents were not the correct parties to serve as representatives in this case, and the costs incurred would not have been spent if petitioner's vaccine attorney had done some simple investigation.  This extraneous (and unsuccessful) work performed by Ms. Hernandez on behalf of someone other than petitioner constitutes "unnecessary or excessive costs" that will not be awarded.  Therefore, $1,894.00 will be deducted from petitioner's vaccine attorneys' costs.

The fees and costs billed by Ms. Agunwa and Mr. Reaser are awarded to the extent they were incurred in seeking to appoint petitioner as legal representative over Mr. Rosas's estate.  The Vaccine Act limits the amount of "compensation to cover petitioner's . . . costs" to those "incurred in any proceeding on [a Vaccine Act] petition." § 15(e)(1).  Such costs often include those that form "'an essential prerequisite condition' to obtaining an award that must 'be fulfilled in order for [the] award to be made.'"  *Bennett v. Sec'y of Health & Human Servs.*, No. 15-65V, 2017 WL 3816094, at *3 (Fed. Cl. Spec. Mstr. Aug. 7, 2017) (quoting *Haber ex rel. Haber v. Sec'y of Health & Human Servs.*, No. 09-458V, 2011 WL 839111, at *2 (Fed. Cl. Spec. Mstr. Feb. 14, 2011)).  Thus, the costs incurred in appointing a legal representative of the estate, which was a necessary requirement for the petition to proceed, will be awarded.  *See* § 11(b)(1)(A).  In this case, a petition was pending at the time of Mr. Rosas's death; to proceed further with the case, petitioner was required to be appointed as the legal representative of the estate in order to stand in the shoes of the decedent and proceed with the claims alleged in the petition.  However, "fees and costs concerning the *administration* of [an] estate" are "disallowed because they were not incurred in any proceeding on the petition."  *Bennett*, 2017 WL 3816094, at *5 (emphasis added) (quoting *Mol v. Sec'y of Health & Human Servs.*, 50 Fed. Cl. 588, 591 (2001)); *see also Siegfried v. Sec'y of Dep't of Health & Human Servs.*, 19 Cl. Ct. 323, 325 (1990).

Moreover, the $3,375 in estate inheritance taxes is not compensable under the Act.  Although petitioner cites cases from other special masters awarding "similar state taxes," *see* Supp. Brief, ECF No. 91 at 9, those cases are not binding on other special masters, and the statutes under consideration in those cases are readily distinguishable from the case at bar.  The cases cited by petitioner involved state sales taxes on attorneys' fees, while this case involves estate inheritance taxes.  Petitioner fails to offer any basis—apart from an unsupported assertion of "similar[ity]"—that awarding $3,375.00 in estate inheritance taxes is reasonable or a cost that should be paid for by the Vaccine Program as they are not fees and costs associated with the petition.  *See Mol*, 50 Fed. Cl. at 588, 591; *Siegfried*, 19 Cl. Ct. at 323, 325.

In sum, the following fees were incurred in establishing (or attempting to establish) petitioner as the legal representative of the estate and will be awarded: $3,166.67 for the work performed by Ms. Agunwa in New York ($1,500.00 reimbursed to Mrs. Rosas for the retainer and $1,666.67 in additional fees to Ms. Agunwa); $1,175.00 for the work performed by Mr. Reaser *prior* to and including petitioner's appointment as legal representative of the estate (4.7 hours at $250 per hour from February 3, 2015, through February 25, 2015, reimbursed to Mrs. Rosas on her $1,500.00 retainer); and $120.50 in court costs awarded to petitioner.  The fees and costs incurred *after* petitioner was appointed as the legal representative of the estate, including the remaining $2,550.00 in attorneys' fees for the administration of the estate and those tasks attendant thereto, and the $3,520.00 submitted representing estate taxes billed by Mr. Reaser, are

not compensable as they are not fees and costs associated with the petition.  *See Mol*, 50 Fed. Cl. at 588, 591; *Siegfried*, 19 Cl. Ct. at 323, 325.

### III. Total Award Summary

Based on the foregoing, the undersigned **GRANTS IN PART** petitioner's Motion for Attorneys' Fees and Costs.  Accordingly, the undersigned awards the following:[14]

- **$111,967.45**, representing $82,048.86 in attorneys' fees and $29,918.59 in attorneys' costs, in the form of a check **payable jointly to petitioner and petitioner's counsel, Isaiah R. Kalinowski, Esq;**

- **$2,795.50**, representing the $1,500.00 retainer to Ms. Agunwa, $1,175.00 in attorneys' fees incurred for work performed by Mr. Reaser prior to and including establishing the estate, and $120.50 in court costs, in the form of a check **payable to petitioner, Jenny Rosas; and**

- **$1,666.67,** representing attorneys' fees incurred in attempting to establish the estate, in the form of a check **payable jointly to petitioner and petitioner's estate attorney, Theresa E. Agunwa, Esq.**

The clerk shall enter judgment accordingly.[15]

**IT IS SO ORDERED.**

**s/ Mindy Michaels Roth**
Mindy Michaels Roth
Special master

---

[14] This amount is intended to cover all legal expenses incurred in this matter.  This award encompasses all charges by the attorney against a client, "advanced costs" as well as fees for legal services rendered.  Furthermore, § 15(e)(3) prevents an attorney from charging or collecting fees (including costs) that would be in addition to the amount awarded herein.  *See Beck* v. *Sec'y of Health & Human Servs.*, 924 F.2d 1029 (Fed. Cir. 1991).

[15] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party filing a notice renouncing the right to seek review.